# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 1:12CR00002 |
| v. | **OPINION AND ORDER** |
| **EDDIE WAYNE LOUTHIAN, SR.,** | By: James P. Jones |
| Defendant. | United States District Judge |

*Sharon K. Burnham, Assistant United States Attorney, Roanoke, Virginia, and Janine M. Myatt and Albert P. Mayer, Special Assistant United States Attorneys, Abingdon, Virginia, for United States; Michael J. Khouri, Khouri Law Firm, Irvine, California, for Defendant.*

In this criminal case, in which the defendant was convicted of health care fraud and related offenses, the government seeks a preliminary order of forfeiture of certain assets that it alleges are proceeds of the crime. While I find that the government is entitled to a money judgment of forfeiture against the defendant, I hold that the government has not shown the requisite traceability from the crimes committed to the assets in question, and thus the identified assets are not forfeitable.

I

The defendant, Eddie Wayne Louthian, Sr., was the president and business manager of Saltville Rescue Squad, Inc. (the "Rescue Squad"), a nonprofit corporation that provides ambulance and emergency medical transportation services in and around the small town of Saltville, Virginia. Louthian, along with the Rescue Squad itself and Monica Jane Hicks, another employee of the Rescue Squad, were charged in this case with a long-running scheme by which fraudulent claims for ambulance services had been presented for payment to Medicare and Anthem Blue Cross and Blue Shield ("Anthem").

Prior to trial, Monica Jane Hicks pleaded guilty and agreed to testify for the government. At the joint jury trial of Louthian and the Rescue Squad, the government presented evidence that between December 1, 2005, and October 1, 2011, Louthian instructed subordinates to falsify information on billing forms submitted to Medicare and Anthem. Specifically, the evidence showed that Louthian instructed the Rescue Squad's staff to state that three dialysis patients were unable to walk and required ambulance transportation when the patients were, in fact, capable of walking and did not need to be transported by ambulance. The evidence further showed that Louthian had instructed Hicks, who was the Rescue Squad's HIPAA officer, to forge physicians' signatures on various Certificates of Medical Necessity. The government presented testimony that

Medicare and Anthem relied on the misrepresentations in these documents and made payments to the Rescue Squad for transporting the three dialysis patients on numerous occasions. The evidence showed that the Rescue Squad would not have received payment for the transports in question if Medicare and Anthem had known that the patients were capable of walking and ambulance transportation was not medically necessary.

At the close of the trial, the jury convicted Louthian of conspiracy to commit health care fraud, health care fraud, making false statements relating to health care matters (four counts), and making false declarations before a grand jury. The jury acquitted Louthian of two charged counts of money laundering. The jury acquitted the Rescue Squad of all charges.

The government now seeks a preliminary order of forfeiture, requesting that the court enter a money judgment against Louthian in the amount of the gross proceeds from the fraudulent scheme. In addition, the government seeks the forfeiture of certain specific property owned by the Rescue Squad, in none of which Louthian claims any interest. The Rescue Squad has objected, but I have held that under existing procedures, it can only participate in the forfeiture proceedings as a third-party claimant in the event that the property is forfeited in Louthian's case. *See* Fed. R. Crim. P. 32.2(c) (providing for ancillary proceedings following final order of forfeiture).

Because neither the government nor Louthian requested a jury determination, a bench hearing was held in order to determine the government's forfeiture request. *See* Fed. R. Crim. P. 32.2(b)(5)(A). At the hearing, Special Agent Robert Slease of the U.S. Department of Health and Human Services, Office of the Inspector General, testified that between December 6, 2005, and October 1, 2011, the Rescue Squad submitted bills to Medicare totaling $1,682,317.80 for unnecessary transports of the three dialysis patients who were able to walk. Medicare actually paid the Rescue Squad a total of $772,120.54 for these unnecessary ambulance trips. Special Agent Slease further testified that between December 1, 2005, and October 1, 2011, Anthem paid the Rescue Squad $135,401.23 for unnecessary transports of the same three dialysis patients.

The government also presented evidence that the Rescue Squad had purchased the following property on the dates and for the prices indicated:

1. 2008 Ford E-450 Type III AEV Ambulance, bill of sale date of 09/22/2008, at a price of $115,498.00, less trade-in allowance of $10,498;

2. 2010 Ford E-450 Ambulance (serial number 1FDXE4FP3ADAD3 542), bill of sale date of 06/15/2010, at a price of $139,942.00, less trade-in allowance of $45,000;

3. 2010 Ford E-450 Ambulance (serial number 1FDXE4FP8ADA32 342), bill of sale date of 02/17/2011, at a price of $135,317.00;

4. 2012 Mercedes Sprinter, bill of sale date of 03/19/2012, at a price of $100,971, less trade-in allowance of $10,000;

> 5. 2012 Chevrolet 4500 Type III AEV Ambulance, 06/22/2012, at a price of $159,432, less trade-in allowance of $10,000; and
>
> 6. Stryker cots with various accessories, invoice date of 03/16/2010, at a price of $77,021.88.

In addition, the government produced evidence that the Rescue Squad had purchased a 40.37 acre parcel of land in January 2008 for a price of $175,000.

The government submitted into evidence a spreadsheet showing, for the relevant time period, the monthly beginning and ending balances of the Rescue Squad's savings account at the Bank of Marion, where fraudulently obtained payments from Medicare and Anthem were deposited. The spreadsheet showed the dates on which fraudulent payments were received, as well as the dates on which the above-listed assets were purchased. The undisputed evidence showed that the bank account contained legitimately obtained revenues — money earned from legitimate billings, fundraisers, and other sources — in addition to money obtained by fraud. Between December 2005 and October 2011, the Rescue Squad made a number of withdrawals from the savings account, including withdrawals made for the purpose of purchasing the assets listed above.

The government seeks a money judgment against Louthian of $907,521, representing the gross proceeds obtained by the Rescue Squad as a result of the offenses for which Louthian was convicted. The government also seeks a preliminary order of forfeiture of all of the assets listed above, including the

Rescue Squad's Bank of Marion savings account, containing $330,616.65, which was seized on February 2, 2012. Both parties have submitted briefs following the forfeiture hearing, and the government's motion is now ripe for disposition.

II

The Federal Rules of Criminal Procedure provides:

> As soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money the defendant will be ordered to pay.

Fed. R. Crim. P. 32.2(b)(1)(A). The court must enter a preliminary order of forfeiture without regard to any third party's interest in the property to be forfeited; the determination of a third party's interest in the property is deferred until the court conducts an ancillary proceeding under Rule 32.2(c). *See* Fed. R. Crim. P. 32.2(b)(2)(A).

The government argues that it is entitled to forfeiture of the specified assets pursuant to 18 U.S.C.A. § 982(a)(7) (West 2000), which states, "The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived,

directly or indirectly, from gross proceeds traceable to the commission of the offense." 18 U.S.C.A. § 982(a)(7). That statute further provides that "forfeiture of property under this section . . . shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853)." 18 U.S.C.A. § 982(b)(1) (West 2000).

The government has the burden of proving by a preponderance of the evidence that forfeiture of the sought property is warranted. *United States v. Cherry*, 330 F.3d 658, 669-70 (4th Cir. 2003). The government can meet its burden through evidence introduced at trial as well as evidence proffered at a hearing on the issue of forfeiture. *See* Fed. R. Crim. P. 32.2(b)(1)(B).

Upon proving the amount of the gross proceeds of the fraud, the government is entitled to a money judgment in that amount. *See United States v. Poulin*, 690 F. Supp. 2d 415, 424-25 (E.D. Va. 2010) (noting that forfeiture statute must be liberally construed and finding that "gross proceeds" contemplates all money obtained from the fraud as well as personal property derived therefrom), *aff'd*, 461 F. App'x 272 (4th Cir. 2012) (unpublished), *cert. denied*, 132 S. Ct. 2448 (2012); *see also United States v. Voigt*, 89 F.3d 1050, 1084-85 (3d Cir. 1996) (finding that the amount of the forfeiture judgment — as contrasted to any specific property subject to forfeiture — is not dictated by whether the government can prove

traceability). When seeking to forfeit specific property, however, the government must prove a sufficient nexus between the property sought to be forfeited and the offenses of which the defendant was convicted. Fed. R. Crim. P. 32.2(b)(1)(A). A sufficient nexus exists when there is a substantial connection between the property to be forfeited and the defendant's crimes. *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010).

The statute addressing forfeiture of proceeds of health care fraud imposes a more specific requirement than some other forfeiture statutes: the proceeds or property derived from the health care offense must be "traceable to the commission of the offense." 18 U.S.C.A. § 982(a)(7). This is in contrast to the money laundering provision of the forfeiture statute, which provides for forfeiture of property "involved in" the underlying money laundering offense. *See* 18 U.S.C.A. § 982(a)(1) (West Supp. 2012). Where legitimate funds were "involved in" the offense of money laundering, courts have found a sufficient nexus despite the fact that illegally obtained funds were commingled with legally obtained funds, because the commingling itself is part of the offense of money laundering. *See, e.g.*, *United States v. McGauley*, 279 F.3d 62, 76-77 (1st Cir. 2002) (distinguishing commingled funds *involved in* money laundering offense from commingling of *proceeds of* offense because in instances of money laundering, the legitimate funds are used to conceal the illegitimate funds); *United States v. Baker,* 227 F.3d 955,

970 n. 4 (7th Cir. 2000) ("[E]ven legitimate funds that are commingled with illegitimate funds can be forfeited if the legitimate funds were somehow involved in the offense, such as by helping to conceal the illegal funds."); *United States v. Tencer,* 107 F.3d 1120, 1135 (5th Cir. 1997) (same).

The government must prove a clearer connection when relying on the "traceable to" clause of § 982(a)(7). *See Poulin*, 690 F. Supp. 2d at 427-28 (finding that "a forfeiture money judgment under § 982(a)(7) must be restricted to money, identified by the Government, that is 'traceable' to the underlying health care offense"). Where fraudulently obtained funds are commingled with legitimately obtained funds, and additional withdrawals and deposits are made from and to the same account, the government likely cannot meet its burden of showing which funds are traceable to the fraud and which are not. *Voigt*, 89 F.3d at 1087. In such cases, however, the government can seek to satisfy its money judgment by forfeiting substitute assets pursuant to 21 U.S.C.A. § 853(p)(1)-(2) (West Supp. 2012). *Id.* at 1088; *see* 18 U.S.C.A. § 982(b)(1) (incorporating 21 U.S.C.A. § 853). When directly forfeitable property, "as a result of any act or omission of the defendant . . . has been commingled with other property which cannot be divided without difficulty. . . . the court shall order the forfeiture of any other property of the defendant, up to the value of" the directly forfeitable property that has been commingled.

Upon consideration of the evidence presented at trial and at the forfeiture hearing, I find that the government has met its burden of proving that it is entitled to a money judgment in the amount of $907,521, representing the gross proceeds of the health care offenses perpetrated by Louthian. Louthian argues that this number erroneously includes the value of certain return trips from dialysis treatments that were, in fact, medically necessary. He contends that the Rescue Squad legitimately billed Medicare and Anthem for these return trips, and therefore any money judgment should exclude money received as payment for the return trips. The forfeiture statute, however, requires forfeiture of the "gross proceeds" of the underlying offenses. 18 U.S.C.A. § 982(a)(7). "Gross proceeds" include "the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied." *Poulin*, 461 F. App'x at 288 (holding that physician perpetrating health care fraud was not entitled to reduction in amount of money judgment as credit for services actually rendered). I find that the payments received for the return trips are part of the gross proceeds of Louthian's fraudulent activity, and the government is entitled to a money judgment totaling $907,521.

I further find, however, that due to the commingling of funds in the Rescue Squad's savings account, the government has not met (and cannot meet) its burden of showing that the specific items of property it seeks to forfeit are traceable to Louthian's fraud. The government's spreadsheet detailing monthly beginning and

ending balances, receipts of fraudulent payments, and corresponding asset purchases was clearly its attempt to trace the identified assets to the health care fraud. Unfortunately, because the Rescue Squad's savings account also contained legitimately obtained funds, and withdrawals were made for other purposes in addition to purchasing the assets in question, there is no reliable way of knowing whether the assets were purchased with the fraud proceeds rather than with the untainted money.[1]

Some courts have found a sufficient nexus between underlying offenses and commingled funds where forfeiture was sought under other statutes, such as the Racketeer Influenced and Corrupt Organizations Act ("RICO").[2] As both the *Voigt* and *Poulin* courts explained, though, the health care offenses forfeiture statute expressly includes a traceability requirement that does not appear in the

---

[1] Indeed, the *Voigt* court found that even in a hypothetical situation where $500,000 of illegally obtained funds were added to an account containing only $500 of legitimate funds, creating a very high probability that any forfeiture would seize tainted funds, the government still could not meet its burden of proving the requisite traceability. *Voigt*, 89 F.3d at 1087 (citing *United States v. $448,342.85*, 969 F.2d 474, 476 (7th Cir. 1992)).

Unlike in the *McGauley* case, 279 F.3d at 66-67, the government cannot argue in this case that the legitimate funds were "involved in" an underlying money laundering offense because the jury acquitted Louthian of money laundering.

[2] *See, e.g.*, *United States v. Robilotto*, 828 F.2d 940, 948-49 (2d Cir. 1987) (holding that commingled funds need not be traced to RICO violation in order to be forfeitable).

RICO forfeiture statute. *Cf.* 18 U.S.C.A. § 1963(a)(3) (West 2000).[3] Section 982(a)(7)'s traceability requirement is rigorous, but § 853(p) balances this rigor by providing for the forfeiture of substitute assets where the defendant has caused the gross proceeds of the offense to become commingled with other property. 21 U.S.C.A. § 853(p)(1)-(2). The government indicated at the forfeiture hearing and in its briefs that it intends to seek forfeiture of substitute assets, but it has not yet submitted a list of those substitute assets. Therefore, I will not enter any order forfeiting substitute assets at this time, but I will entertain such a motion from the government within thirty days following the entry of the preliminary forfeiture order.

---

[3] The statute governing forfeiture in drug-related cases also includes a traceability element. *See* 21 U.S.C.A. § 881(a)(6) (West Supp. 2012) (providing for forfeiture of "all proceeds traceable to" an illegal drug transaction). Several courts of appeals have applied this provision to forfeit all money contained in commingled bank accounts even though the government could not specifically prove which money was tainted and which money was legitimate. *See United States v. Carrell*, 252 F.3d 1193 (11th Cir. 2001); *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir. 1986). When these cases were decided, however, the government was only required to show that it had probable cause to believe that the forfeited funds were proceeds of the underlying offenses. In 2000, Congress enacted the Civil Asset Forfeiture Reform Act ("CAFRA"), which changed the burden of proof. *See* 21 U.S.C.A. § 983(c) (West 1999). The government must now prove by a preponderance of the evidence that property sought to be forfeited represents proceeds traceable to the underlying drug transaction. *Id.*; *see United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002). In light of the heightened burden of proof required under CAFRA, I question the continuing validity of cases like *Banco Cafetera* and *Carrell*, and I do not find their analyses to be applicable in this case. The *Voigt* case, on the other hand, was decided under the same preponderance of evidence standard that is applicable here. 89 F.3d at 1050, 1087 & n.22. Thus, I find the *Voigt* court's analysis to be more persuasive.

It is noteworthy that all of the property the government seeks to forfeit is owned by the Rescue Squad, which was acquitted of all charges. Louthian has expressly disclaimed any interest in the sought property. The Rescue Squad, as a third party, has not been a participant in the preliminary forfeiture proceedings. *See United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012) ("A codefendant in a criminal case is properly viewed as a third party with regard to another defendant's forfeiture of property."). The Rescue Squad's acquittal arguably poses a problem for the government in this criminal forfeiture action, in which the government seeks forfeiture of property solely owned by the Rescue Squad. Here, the Rescue Squad is not simply a third party with an ownership interest in the property; it is an *acquitted* codefendant and the *sole* owner of the property. The Fourth Circuit has distinguished criminal forfeiture cases from civil forfeiture cases: "Unlike criminal forfeiture cases, conviction for the underlying criminal activity is not a prerequisite for forfeiture of the property [in a civil forfeiture proceeding]. In civil forfeiture cases, property is subject to forfeiture 'even if its owner is acquitted of — or never called to defend against — criminal charges.'" *United States v. 7715 Betsy Bruce Lane,* 906 F.2d 110, 111-12 (4th Cir. 1990) (quoting *United States v. 3120 Banneker Drive N.E.*, 691 F. Supp. 497, 499 (D.D.C. 1988)). This statement implies, of course, that in a criminal forfeiture proceeding, conviction of an underlying offense *is* a prerequisite for the forfeiture

of a party's assets. Moreover, courts have repeatedly stated that criminal forfeiture is punitive in nature, and its purpose is to disgorge *the convicted defendant* of the proceeds of his wrongdoing. *See, e.g.*, *United States v. Contorinis*, 692 F.3d 136, 146-47 (2nd Cir. 2012); *United States v. Casey*, 444 F.3d 1071, 1074 (9th Cir. 2006), *Cherry*, 330 F.3d at 669.

Because I resolve the government's motion for a preliminary order of forfeiture on other grounds, I need not fully address the issue of the Rescue Squad's acquittal at this time. Nevertheless, I note that forfeiting property solely owned by an acquitted party would seem to run counter to the interests of justice. The money judgment I order is against Louthian. Should the government seek forfeiture of substitute assets at some point in the future, the substitute assets will have to be assets in which Louthian himself has an ownership interest.

Louthian has also moved for dissolution of the Superseding Protective Order (ECF No. 212) that is currently restraining his assets. However, because the government may be entitled to forfeiture of substitute assets, I decline to dissolve the Superseding Protective Order at this time to the extent it restrains property owned by Louthian, either in whole or in part. To the extent that such Order restrains property owned by the Rescue Squad, the Rescue Squad is granted leave to file an appropriate motion for consideration by the court seeking to modify such Order.

III

For the reasons stated above, it is **ORDERED** as follows:

1. The government's request for a preliminary order of forfeiture as to defendant Eddie Wayne Louthian, Sr., is GRANTED IN PART AND DENIED IN PART;

2. The request for a money judgment in forfeiture against said defendant in the amount of $907,521 is GRANTED and the court will enter herewith a separate Preliminary Order of Forfeiture determining such amount;

3. The request for forfeiture of other specified property is DENIED; and

4. The defendant's Motion to Dissolve Protective Order (ECF No. 218) is DENIED.

ENTER: February 15, 2013

/s/  James P. Jones
United States District Judge